Steven W. Fogg, WSBA No. 23528
CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, WA 98104-1001
Ph: (206) 625-8600

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AMANDA BANTA, SHARP SHOOTING INDOOR RANGE & GUN SHOP, INC., THE RANGE, LLC, AERO PRECISION LLC, and NATIONAL SHOOTING SPORTS FOUNDATION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT W. FERGUSON, Attorney General of the State of Washington, and JOHN R. BATISTE, Chief of the Washington State Patrol,<br><br>Defendant. | No. 2:23-cv-00112-MKD<br><br>DECLARATION OF JEREMY BALL ON BEHALF OF SHARP SHOOTING INDOOR RANGE & GUN SHOP |

DECLARATION OF JEREMY BALL - 1

## CERTIFICATE OF SERVICE

I hereby certify that on (Date), I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice.

DATED at Seattle, Washington on 4th day of May, 2023.

s/ Megan Johnston
Megan Johnston, Legal Assistant
Corr Cronin LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104
Phone: (206) 625-8600
Email: mjohnston@corrcronin.com

DECLARATION OF JEREMY BALL

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**<u>Declaration of Jeremy Ball on behalf of Sharp Shooting Indoor Range & Gun Shop</u>**

I, Jeremy Ball, hereby declare as follows.

1. I am over the age of 18 years, and I am qualified to submit this declaration on behalf of Red Dog Sporting Company DBA Sharp Shooting Indoor Range & Gun Shop ("Sharp Shooting").

2. I am the co-owner and President of Sharp Shooting Indoor Range & Gun Shop, a retail firearms business located in Spokane, Washington. My wife and I co-own & purchased the business in 2021 from my parents Robin and Steve Ball, who opened Sharp Shooting in 1995.

3. I have personal knowledge of the facts set forth in this declaration through direct involvement and by personally reviewing Sharp Shooting's records and information.

4. Sharp Shooting is authorized by law to sell firearms as a Federal Firearms Licensee (FFL 01) licensed by the Bureau of Alcohol, Tobacco, Firearms and Explosives.

5. Sharp Shooting is a member of the National Shooting Sports Foundation.

6. Over the past two years (2021 and 2022), Sharp Shooting purchased from firearms distributors and manufacturers approximately $5,400,000 worth of firearms, magazines, and related merchandise. Of that amount, approximately $1,800,000, or 33%, was attributable to firearms that Washington now deems "assault weapons" and accessories for the same.

7. Over the past two years (2021 and 2022), approximately 30% of Sharp Shooting's gross revenue was attributable to firearms that Washington now deems "assault weapons" and accessories for the same.

8. I have no reason to believe that 2023 would have been materially different in terms of Sharp Shooting's sales without the recent enactment of Washington HB 1240.

9. Sharp Shooting currently has in its inventory more than $140,000 worth of firearms and magazines that, under HB 1240, are now unlawful to sell in Washington as well as outside of Washington. This includes not only a number of firearms on the AR platform, but also a number of other semi-automatic rifles, shotguns, and pistols all now deemed to be unlawful under HB 1240. In addition to that expansive inventory, we are also holding many firearms parts and accessories now deemed to be illegal under this law equating to more than an additional $50,000.

10. Among the $140,000 in rifles in our inventory are more than 100 AR-platform rifles that Sharp Shooting recently received from the Kitsap County Sheriff's Office, which were delivered as partial payment in exchange for new rifles and suppressors. Kitsap County intends to provide an additional 25 rifles still owed to Sharp Shooting by the beginning of May 2023, but Sharp Shooting now will not be able to accept delivery as a result of the new law.

11. Going back to early 2022, I began to work on a contract with Kitsap County. The goal was to replace all of the County Sheriff's Department's current 150+ duty rifles. The Department wanted to use the assortment of rifles it had as in-kind payment towards the purchase of the new firearms and suppressors the Department ordered. The Department had approximately 125 such rifles to trade in, for a value of more than $65,000, plus an additional 20 machine guns that would be transferred directly from Kitsap to future police departments or government agencies, putting the total trade in value over $85,000. The expected retail profit from these firearms was used to offset the purchase price of the new firearms for the Department.

12. In my experience, this sort of trade-in deal is an extremely common business practice for law enforcement agencies. Law enforcement trade programs are critical to the needs of law enforcement in Washington and will not be allowed under HB 1240.

13.     There are multiple problems with HB 1240 that prevent Sharp Shooting from being made whole after doing business with a Washington State county government. First, Sharp Shooting cannot take possession of the 25 additional firearms the Kitsap County Department still owes. Second, HB 1240 discriminates against small, local firearms dealers by not allowing them to purchase "Assault Weapons" at wholesale for the purpose of resale in or out of state. This discrimination is only effective to firearms dealers and distributors, meanwhile preserving the ability of firearms manufacturers to distribute these types of firearms to any other dealer or distributor located outside of Washington. All three types of businesses have the same level of oversight by the state and federal government making this law explicitly discriminatory.

14.     Sharp Shooting entered into a binding contract with Kitsap County Sheriff's Office months in advance of the legislature taking issue with so called "assault weapons" and enacting an emergency enforcement clause to inflict as much harm as possible onto retailers who secure inventory for their businesses as much as a year in advance. But now, under Washington HB 1240, Sharp Shooting cannot lawfully sell any of these products, including those recently received from Kitsap County, to anyone in Washington.

15.     Absent an injunction preventing Washington HB 1240 from being applied against Sharp Shooting, Sharp Shooting will suffer irreparable harm in terms of lost business.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of April, 2023.

By: _____
Jeremy Ball