# EXHIBIT B

**CORR CRONIN | LLP**

**STEVEN W. FOGG**
*Attorney at Law*

(206) 274-8669
sfogg@corrcronin.com

August 8, 2023

The Chambers of the Hon. Mary K. Dimke
United States District Court for the Eastern District of Washington
Thomas S. Foley United States Courthouse
920 West Riverside Avenue, Room 840
Spokane, WA 99201

    Re:    *Banta v. Ferguson*, No. 2:23-cv-00112

Dear Judge Dimke:

    On August 7, 2023, the Ninth Circuit issued a published opinion in *Teter v. Lopez*, No. 20-15948 (9th Cir. Aug. 7, 2023). A copy of the Ninth Circuit's decision is attached to the Statement of Additional Authorities as Exhibit A. *Teter* squarely forecloses nearly all of the state's arguments in defense of HB 1240, Washington's recently enacted ban on hundreds of models of semiautomatic firearms that are commonly owned by law-abiding citizens for lawful purposes, which Plaintiffs challenge as inconsistent with the Second Amendment.

    1. The state here argues that "Plaintiffs' Second Amendment claim fails at *Bruen*'s first step because the Second Amendment does not afford a right to keep and bear military-style weapons that are not commonly used for self-defense." Dkt. 30 at 9. But *Teter* explicitly "reject[ed] Hawaii's argument that the purported 'dangerous and unusual' nature of butterfly knives means that they are not 'arms' as that term is used in the Second Amendment." Slip op. 20. As *Teter* explained, "*Heller* itself stated that the relevance of a weapon's dangerous and unusual character lies in the '*historical tradition* of prohibiting the carrying of dangerous and unusual weapons.'" Slip op. 20-21 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008)). "It did not say that dangerous and unusual weapons are not *arms*. Thus, whether butterfly knives are 'dangerous and unusual' [wa]s a contention as to which Hawaii b[ore] the burden of proof in the second prong of the *Bruen* analysis." Slip op. 21. The analytical framework for semiautomatic firearms is no different. The threshold textual question (or what the state here calls "*Bruen*'s first step") here is thus simply whether semiautomatic rifles, pistols, and shotguns "fit the general definition of 'arms' as '[w]eapons of offence' that may be 'use[d] in wrath to cast at or strike another.'" Slip op. 19 (quoting *Heller*, 554 U.S. at 582). The answer to that question is clearly yes; indeed, the state has never argued otherwise. As a result, "the Constitution 'presumptively guarantees' keeping and

The Chambers of the Hon. Mary K. Dimke
Re: *Banta v. Ferguson*, No. 2:23-cv-00112
August 8, 2023
Page 2

bearing such instruments 'for self-defense.'" Slip op. 19-20 (quoting *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111, 2135 (2022)).

2. The state here argues that banning "weapons associated with interpersonal violence" by criminals is consistent with the Second Amendment. Dkt. 30 at 18. *Teter* explicitly rejected this argument. Hawaii "argue[d] that 'banning weapons associated with criminals' … [does] not violate the Second Amendment.'" Slip op. 20. But that "argument fail[ed]" in *Teter* because Hawaii's ban "is not limited to criminals," and the plaintiffs in *Teter* "are not criminals." *Id.* So too here: The fact that *other* people might misuse the firearms HB 1240 bans for violent criminal ends does not save the statute, which applies to ordinary law-abiding citizens like Plaintiffs and "is not limited to criminals."

3. The state here argues that common ownership by law-abiding citizens is not a relevant metric, deriding that view as a "popularity-contest argument." Dkt. 30 at 14. But *Teter* made clear that—as Plaintiffs have consistently argued in this case—what matters under *Bruen* and *Heller* is, in fact, whether the arms that a state seeks to ban "are commonly *owned* for lawful purposes." Slip op. 22 (emphasis added); *see also id.* ("no basis for concluding that these instruments are not commonly *owned* for lawful purposes"; "no evidence that butterfly knives are not typically *possessed* by law-abiding citizens for self-defense" (emphases added)). Indeed, the *Teter* court concluded that the challengers were entitled to summary judgment on what the state here calls the "common use" inquiry because there was "no genuine issue of material fact as to whether butterfly knives are commonly *owned* for lawful purposes." *Id.* (emphasis added).

4. The state here argues that HB 1240's categorical ban on numerous types of arms does not "restrict[] Plaintiffs' ability to bear arms in self-defense" in any "material[]" sense because "plenty of [other arms] are lawfully for sale in Washington." Dkt. 30 at 23. *Teter* squarely rejected this argument as well. After all, lots of knives and guns are available for sale in Hawaii, yet that did not make the ban on butterfly knives any less unconstitutional.

5. *Teter* squarely rejected the contention that historical laws that "regulated only the[] *carry*" of arms can be considered "proper historical analogues" to a law like HB 1240 that "categorically ban[s] the possession of [various] type[s] of [arms]." Slip op. 24. Thus, the state's reliance here on "regulations of Bowie knives and pistols" from "the 19th and 20th centuries," Dkt. 30 at 19-20, fails too. "The vast majority of the statutes cited by Hawaii," which are the very same ones Washington invokes here, "prohibited the *concealed carry* of bowie knives, … or other 'deadly weapons.'" Slip op. 25. "Other statutes were even more targeted. Some prohibited carry by certain individuals, carry in certain places at certain times, or carry for certain purposes, and still others regulated dangerous conduct, such as dueling with a weapon. Many of these statutes excepted the carry of prohibited weapons for self-defense, for 'lawful purposes,' while traveling, or in their owners' homes." Slip op. 25-27 (footnotes omitted). "This historical background makes our analysis relatively 'straightforward.'" Slip op. 29 (quoting *Bruen*, 142 S.Ct. at 2131). Interpersonal violence is "'a general societal problem that has persisted since the 18th century'"; given that, the

The Chambers of the Hon. Mary K. Dimke
Re:  *Banta v. Ferguson*, No. 2:23-cv-00112
August 8, 2023
Page 3

fact that the historical record contains no "'distinctly similar historical regulation'" that "'addressed the societal problem'" through similar "'means,'" means that HB 1240's categorical ban on common arms "violates the Second Amendment."  Slip op. 29-31 (quoting *Bruen*, 142 S.Ct. at 2131).

      6.  Finally, the state here argues that it needs "discovery to uncover and illuminate the relevant historical tradition of weapons regulation, including laws and regulatory practices throughout our history and the historical contexts in which they arose."  Dkt. 30 at 25.  *Teter* forecloses this argument too.  In *Teter*, Hawaii "argued that further *historical* research is needed in light of *Bruen*," and thus sought "a remand" for such discovery.  Slip op. 14.  The Ninth Circuit rejected this argument, explaining that "the issue" of whether a state may ban a class of bearable arms "does not require further [factual] development" beyond the identity of the plaintiffs and the scope of the challenged law.  *Id.*  That is because "the historical research required under *Bruen* involves issues of so-called 'legislative facts'—those 'which have relevance to legal reasoning and the lawmaking process,' such as 'the formulation of a legal principle or ruling by a judge or court'—rather than adjudicative facts, which 'are simply the facts of the particular case.'"  *Id.* (quoting Fed. R. Evid. 201, advis. comm. note (1972 proposed rules)).  Thus, given that it is always the state's burden in Second Amendment challenges to come forward with historical analogues, the critical questions here are whether the supposed analogues to which Washington pointed in its opposition to Plaintiffs' motion for preliminary injunction "impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified."  Slip op. 23 (quoting *Bruen*, 142 S.Ct. at 2133).  The answer to that question is no—as *Teter* again makes clear.  Indeed, if the same historical restrictions on carrying knives that Washington invokes here could not sustain Hawaii's flat ban on common knives, then *a fortiori* they cannot sustain Washington's flat ban on common firearms.

      Respectfully submitted,

      CORR CRONIN LLP

      *s/ Steven W. Fogg*
      Steven W. Fogg, WSBA No. 23528
      CORR CRONIN LLP
      1015 Second Avenue, Floor 10
      Seattle, Washington 98104-1001
      Ph: (206) 625-8600 | Fax: (206) 625-0900
      sfogg@corrcronin.com

The Chambers of the Hon. Mary K. Dimke
Re:  *Banta v. Ferguson*, No. 2:23-cv-00112
August 8, 2023
Page 4

                                                    Paul D. Clement*
                                                    Erin E. Murphy*
                                                    Matthew D. Rowen*
                                                    Mariel A. Brookins*
                                                    CLEMENT & MURPHY PLLC
                                                    706 Duke Street
                                                    Alexandria, VA 22314
                                                    (202) 742-8900

                                                   * admitted *pro hac vice*

                                                   Counsel for Plaintiffs