KRISTIN BENESKI, WSBA #45478
*First Assistant Attorney General*
ANDREW R.W. HUGHES, WSBA #49515
R. JULY SIMPSON, WSBA #45869
WILLIAM MCGINTY, WSBA #41868
*Assistant Attorneys General*
Washington Attorney General's Office
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

The Honorable Mary K. Dimke

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**
**AT SPOKANE**

AMANDA BANTA, et al.,

Plaintiffs,

v.

ROBERT W. FERGUSON, Attorney General of the State of Washington, et al.,

Defendants,

ALLIANCE FOR GUN RESPONSIBILITY,

Defendant-Intervenor.

NO. 2:23-cv-00112-MKD

STATE DEFENDANTS' SURREPLY TO PLAINTIFFS' SUPPLEMENTAL REPLY

## I. INTRODUCTION

Plaintiffs' supplemental reply seeks to re-argue and expand upon many of the arguments Plaintiffs have already briefed, this time through the lens of a new Ninth Circuit opinion in *Teter v. Lopez*. But Plaintiffs' supplemental reply misconstrues *Teter*, misconstrues the State's arguments, and ignores binding precedent—both the plain dictates of *Bruen* and *Heller*, and Ninth Circuit case law consistent with those precedents.

## II. ARGUMENT

### A. Plaintiffs Bear the Burden of Proof at *Bruen* Step One

Plaintiffs assert that *Teter* absolves them of their burden of proving that assault weapons are in common use for self-defense under the first step of the *Bruen* analysis. ECF No. 42-2 at 2–3. They are wrong. As the State explained in its Opposition, ECF No. 30 at 9-10, *Heller* and *Bruen* make crystal clear that the plain text of the Second Amendment, as understood by the Founders, only covers "weapons 'in common use' today for self-defense." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2134 (2022) (quoting *D.C. v. Heller*, 554 U.S. 570, 627). If, but only if, Plaintiffs can make that showing, does the burden shift to the State to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130; *see also id.* at 2130, 2134 (confirming that "handguns are weapons in common use today for self-defense" before turning to whether the challenged restriction was



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

"consistent with the Nation's historical tradition of firearm regulation"). Following *Bruen* and *Heller*, the Ninth Circuit recently confirmed that:

> ***Bruen* step one** involves a threshold inquiry. In alignment with *Heller*, it requires a textual analysis, determining whether the challenger is "part of 'the people' whom the Second Amendment protects," **whether the weapon at issue is " 'in common use' today for self-defense**," and whether the "proposed course of conduct" falls within the Second Amendment. *Id.* at 2134–35 (citing *Heller*, 554 U.S. at 580, 627, 128 S.Ct. 2783).
>
> If the first step is satisfied, we proceed to *Bruen* step two, at which the "government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2130.

*United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023) (quoting *Bruen* at 2134–35) (emphasis added).

Under *Bruen*, Plaintiffs carry the burden of proving that assault weapons are "in common use . . . for self-defense," and as discussed in the State's opposition brief, they cannot meet that burden. *Heller* makes clear that the self-defense weapons included within the plain text of the Second Amendment, as understood by the Framers, does not include "weapons that are most useful in military service"—which undeniably includes assault weapons. *Heller*, 554 U.S. at 627; ECF No. 30 at 10–11. Further, the record evidence shows that assault weapons are not designed for, and almost never used for, self-defense.



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

ECF No. 30 at 11–13. Accordingly, Plaintiffs cannot meet their burden of showing that assault weapons are protected by the Second Amendment.[1]

**B. *Dicta* in *Teter* Does Not Alter the "Common Use" Doctrine**

Plaintiffs also argue that *Teter* supports their popularity-contest argument whereby any weapon—no matter how dangerous—is constitutionally sacrosanct, as long as gun sellers sell enough of them. ECF No. 42-2 at 3. Plaintiffs place too much weight on *Teter*'s paraphrasing *dicta*, while ignoring the actual standard established by both *Heller* and *Bruen*: that "common use" (not common ownership) is the relevant metric.[2] *Heller* makes clear that the Second Amendment covers only "arms 'in common *use* at the time for lawful purposes like self-defense." *Heller*, 554 U.S. 570, 624 (cleaned up; emphasis added). Further on in *Heller*, the Court again "recognize[d] an[] important limitation on the right to keep and carry arms" for self-defense: namely, "that the sorts of weapons protected were those in common *use* at the time." *Heller*, 554 U.S. 570,

---

[1] Even if the burden *were* on the State, as Plaintiffs wish, the evidence in the record overwhelmingly favors the State.

[2] Notably, the *Teter* panel's discussion of "ownership" and "possession" occurred in the context of addressing a ban on the *possession* of butterfly knives. Though Plaintiffs mischaracterize the law at issue here as a "categorical ban" and a "flat ban," HB 1240 does not prohibit the possession of assault weapons. ECF No. 30 at 3.



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

627 (emphasis added).[3] *Bruen* reaffirms this, quoting the "common use" language from *Heller*. *Bruen*, 142 S. Ct. at 2128, 2134.[4] Following *Heller*, courts that have specifically addressed the question (which *Teter* did not) have concluded that use, not ownership, is the lodestar under *Heller* and *Bruen*. *See, e.g.*, *Nat'l Ass'n for Gun Rights*, 2023 WL 4975979, at *13–14; *Oregon Firearms Fed'n, Inc. v. Brown*, 2:22-CV-01815-IM, 2022 WL 17454829, at *10 (D. Or. Dec. 6, 2022), *appeal dismissed*, 22-36011, 2022 WL 18956023 (9th Cir. Dec. 12, 2022).

Moreover, *Teter's* analysis plainly focuses on use, even though it does not quote the "use" language from *Heller* and *Bruen.* The panel highlighted "Hawaii's own witness conced[ing] that butterfly knives may be *used* for self-defense." Slip Op. at 22 (emphasis added). The panel further emphasized

---

[3] *Heller* also makes clear that there is no constitutional protection for "weapons that are most useful in military service"; it does not "make[] an exception for such weapons if they are sufficiently popular." *Kolbe v. Hogan*, 849 F.3d 114, 142 (4th Cir. 2017) (quoting *Heller*, 554 U.S. at 627),

[4] To be sure, *Heller*, similar to *Teter*, once refers to "weapons not typically *possessed* by law-abiding citizens for lawful purposes." *Id.* at 624. But it does so only to distinguish them from "arms in common *use* at the time for lawful purposes like self-defense," which are the arms covered by the Second Amendment, according to *Heller*. *Id.* (emphasis added).

that "butterfly knives . . . are an integral part of the [F]ilipino martial art called Escrima[.]" *Id.* at 22 (cleaned up). This is in marked contrast to assault weapons, which are neither useful nor actually used for self-defense. ECF No. 30 at 5–7; *see also Hartford*, 2023 WL 3836230, at *6. Once again, *Teter* does not support Plaintiffs.

### *C.* ***Teter*** **Does Not Foreclose the "Nuanced Approach" Directed by** ***Bruen***

Plaintiffs argue that *Teter* forecloses this Court from relying on some of the historical regulations discussed by the State's experts. Again, there is no merit to Plaintiffs' argument.

First and foremost, *Teter's* entire historical analysis is distinguishable because it applies a different rubric than this Court must apply. As the Supreme Court explained in *Bruen*, "some cases" involve a "fairly straightforward" inquiry. *Bruen*, 142 S. Ct. at 2131. Critically, the Court explained that "when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a *distinctly similar* historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id* (emphasis added). This is precisely what the Ninth Circuit faced in *Teter*, which concerned the regulation of fighting knives. Slip Op. at 4–5. Indeed, as Professor Robert Spitzer shows here, state legislatures have been regulating fighting knives for centuries. ECF No. 35 at 13–28. So it was appropriate for the panel in *Teter* to demand a



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

close fit—a distinct similarity—between 19th century fighting-knife regulations and 21st century fighting-knife regulations.

This case, by contrast, involves a government response to "dramatic technological changes"—the development of assault weapons that offer civilians military-grade firepower—and "unprecedented societal concerns"—the rise, increasing prevalence, and increasing lethality of mass shootings.[5] *Bruen*, 142 S. Ct. at 2132. In such a case, *Bruen* instructs courts to adopt "a more nuanced approach," focusing on "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 2132-33. The "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Id.*

---

[5] Plaintiffs suggest that HB 1240 does not respond to a novel societal concern because "interpersonal violence" is a problem of long standing. ECF No. 42-2 at 3. But abstracting to such a high level of generality is meaningless. Indeed, *every* weapons regulation responds to the problem of interpersonal violence; if Plaintiffs were correct that such an overbroad framing was the proper lens through which to evaluate whether a regulation responded to unprecedented societal concerns, none would meet the test, and much of *Bruen* would be surplusage.



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

The historical analogues put forth by the State Defendants in this case are plainly analogous to HB 1240 in both how and why they burden self-defense. For instance, Professor Spitzer notes that 15 states "all but banned" Bowie knives by banning both concealed *and* open carry. ECF No. 35 at 20. This is considerably more restrictive than Washington's law, which enables those who already own assault weapons to continue using them for all lawful purposes (again, HB 1240 is hardly the "categorical ban" or "flat ban" that Plaintiffs claim it is). Notably, just as HB 1240 prohibits prospective sales of assault weapons, the carry restrictions discussed by Professor Spitzer also prohibited sales because there is no way to sell a Bowie knife without the buyer, seller, or both carrying the weapon at some point. Further, Plaintiffs' effort to distinguish carry bans ignores that other States outright banned the sale of Bowie knives, just as HB 1240 largely bans the sale of assault weapons. *See Hartford v. Ferguson*, 3:23-CV-05364-RJB, 2023 WL 3836230, at *4 (W.D. Wash. June 6, 2023) (citing *Bevis v. City of Naperville, Illinois*, 22 C 4775, 2023 WL 2077392, at *10 (N.D. Ill. Feb. 17, 2023)). And again, the evidence is that assault weapons have little if any use for self-defense, so the burden on self-defense imposed by HB 1240 borders on *de minimis*, in contrast the Bowie knife regulations discussed by Professor Spitzer. In any event, the plaintiffs in *Hartford* already raised the same argument, and Judge Bryan, applying the "nuanced approach" called for by *Bruen*, correctly rejected it, concluding:



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

> The burden imposed by both the historical regulations and HB 1240 are "relevantly similar:" they impose "comparable burdens" on the right of armed self-defense, and those burdens are "comparably justified." *Bruen* at 2133. The burden of HB 1240 on armed self-defense is slight. The proponents of HB 1240 have pointed to evidence that assault weapons are rarely used for self-defense. Moreover, the burdens imposed by the historical regulations [identified by the State] and HB 1240 are "comparably justified." All were enacted to respond to public safety concerns regarding weapons considered to be extremely dangerous.
>
> The Plaintiffs have not shown a "likelihood of success on the merits" or that there are "serious questions going to the merits" on the issue of whether HB 1240 violates their Second Amendment rights.

*Hartford*, 2023 WL 3836230, at *6 (ECF citations omitted); *see also Bevis*, 2023 WL 2077392, *16 ("Because assault weapons are particularly dangerous weapons …, their regulation accords with history and tradition."); *Herrera v. Raoul*, 2023 WL 3074799, at *4 (N.D. Ill. Apr. 25, 2023) (concluding Illinois' prohibition on assault weapons is "consistent with 'the Nation's historical tradition of firearm regulation,' namely the history and tradition of regulating particularly 'dangerous' weapons"); *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 2023 WL 2655150, at *13 (D. Del. Mar. 27, 2023) (concluding Delaware's prohibition on assault weapons is "consistent with the Nation's historical tradition of firearm regulation"); *Nat'l Ass'n for Gun Rights v. Lamont*, CV 3:22-1118 (JBA), 2023 WL 4975979, at *33 (D. Conn. Aug. 3, 2023) (concluding that Connecticut's prohibition on assault weapons "imposes a comparable burden to the regulations on Bowie knives . . . and other dangerous or concealed weapons" and are based on the "same" rationale of "respond[ing]



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

to growing rates of violence and lethality caused by modern innovations in technology and changing patterns of human behavior by regulating the particular kinds of weapons or modes of carry that were being most often employed by those causing the violence, while leaving open alternative avenues for lawful possession of firearms for purposes of self-defense").

### D. *Teter*'s Rejection of Arguments Not Made Here Is Irrelevant

Plaintiffs highlight the *Teter* panel's finding that the exclusion of "criminals" from the Second Amendment's purview was not dispositive in that case because "Hawaii's ban [on butterfly knives] is not limited to criminals." Slip op. at 20; ECF No. 42-2 at 3. That finding has minimal relevance here, however, because—while both *Heller* and *Bruen* do indeed emphasize that only "law-abiding" citizens can invoke Second Amendment rights—the State did not invoke this step-one truism in its opposition brief. That is because the purpose of HB 1240 is not to prohibit "criminals" from possessing assault weapons; indeed, all convicted felons in Washington are already prohibited from possessing *any* firearm. Wash. Rev. Code § 9.41.040. Rather, the purpose of HB 1240 is to "limit the prospective sale of assault weapons" because their military-style features make them attractive to mass shooters, and reducing their proliferation in the civilian market "is likely to have an impact on the number of mass shootings committed in Washington." HB 1240 § 1. *Teter* in no way undercuts the State



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Defendants' actual arguments—including the step-two argument that HB 1240 is analogous to other regulatory responses to weapons associated with interpersonal violence—which demonstrate that HB 1240 is fully consistent with the Second Amendment.

### E. *Teter* Does Not Apply or Address the *Winter* Standard

Plaintiffs assert that *Teter* "squarely rejected" the State's argument that HB 1240 "does not 'restrict[] Plaintiffs' ability to bear arms in self-defense' in any 'material[]' sense because 'plenty of [other arms] are lawfully for sale in Washington.'" ECF No. 42-2 at 3 (quoting ECF No. 30 at 23). Once again, *Teter* did no such thing. The State Defendants made this particular argument to rebut Plaintiffs' assertion, under *Winter v. Nat. Res. Def. Council Inc.*, 555 U.S. 7, 24 (2008), that they will suffer irreparable harm during the pendency of this lawsuit absent a preliminary injunction. ECF No. 30 at 23. As the State Defendants explained, HB 1240 only limits Plaintiffs' ability to purchase *additional* assault weapons without affecting their ability to use the assault weapons they already say they own, and without affecting their ability to purchase and use any other lawful weapon. *Id.* As such, though Plaintiffs may be inconvenienced by HB 1240's sales ban, they will suffer no irreparable harm warranting the extraordinary remedy of a preliminary injunction. *Id.* *Teter* did not "squarely reject"—or even address—such an argument. *Teter* was an appeal from summary judgment, and did not involve application of the *Winter* factors at all.

**F. The State Defendants Have a Right to Develop a Record in This Case**

Finally—besides seeking to shift their burden to the State Defendants and foreclose valid lines of factual and legal inquiry—Plaintiffs make the remarkable argument that the State is not entitled to take *any* discovery in this case. ECF No. 42-2 at 4. Plaintiffs overread and misapply *Teter*'s comment that "further" discovery was not warranted in that case—which, again, was an appeal from a grant of summary judgment—where the panel found that "Hawaii already had a full opportunity to put forward a record . . . ." Slip op. at 15 n.6. This case, by contrast, is at a very early procedural stage, and there has not yet been any meaningful opportunity for discovery or the development of historical facts as contemplated by *Bruen*. Plaintiffs also ignore that *Teter* was applying a procedural principle that has no relevance here: namely, that a case on appeal will be remanded when an intervening change in law requires the development of additional adjudicative facts. Slip op. at 14. This principle has no relevance to the development of a factual record in a district court in the first instance.

Furthermore, whatever the merits of the *Teter* panel's decision not to remand on the facts before it, reading it as a flat bar to discovery conflicts with the Ninth Circuit's *en banc* remand order in *Duncan v. Bonta*, 49 F.4th 1228, 1231 (9th Cir. 2022). As Plaintiffs' counsel is aware—having been on the losing side of this battle—the plaintiff in *Duncan* argued that no remand was necessary because no further factual development was required. ECF No. 207,



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*Duncan v. Bonta*, Case. No. 19-55376 (9th Cir.). But in remanding over plaintiff's objection, the *en banc* panel rejected this argument in no uncertain terms. Here, as in *Duncan*, the State Defendants cannot fairly be denied the opportunity to develop the factual record in this case.

RESPECTFULLY SUBMITTED this 10th day of August 2023.

ROBERT W. FERGUSON
Attorney General

*/s/ Andrew Hughes*
KRISTIN BENESKI, WSBA #45478
First Assistant Attorney General
ANDREW R.W. HUGHES, WSBA #49515
R. JULY SIMPSON, WSBA #45869
WILLIAM MCGINTY, WSBA #41868
Assistant Attorneys General
*Counsel for State Defendants*



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**DECLARATION OF SERVICE**

I hereby declare that on this day I caused the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF System which will serve a copy of this document upon all counsel of record.

DATED this 10th day of August 2023, at Seattle, Washington.

*/s/ Andrew Hughes*
ANDREW R.W. HUGHES, WSBA #49515
Assistant Attorney General



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744